UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PIONEER NATURAL RESOURCES | § | |
| USA, INC.; MARATHON OIL COMPANY; | § | CIVIL ACTION NO. 05-0224 |
| NIPPON OIL EXPLORATION U.S.A. LIMITED; | § | SECTION "T" |
| TOTAL E&P USA, INC.; BP EXPLORATION | § | MAGISTRATE "3" |
| & PRODUCTION, INC.; and MARUBENI OIL | § | |
| & GAS (USA), INC. | § | |
| | § | HON. G. THOMAS PORTEOUS, JR. |
| v. | § | |
| | § | |
| DIAMOND OFFSHORE COMPANY, | § | |
| DIAMOND OFFSHORE (TRINIDAD) L.L.C., | § | MAGISTRATE JUDGE, |
| and DELMAR SYSTEMS, INC. | § | DANIEL KNOWLES, III |

## DIAMOND DEFENDANTS' SUPPLEMENTAL MEMORANDUM TO STRIKE THE OPINIONS OF PLAINTIFFS' EXPERT COURTNEY BUSCH

Defendants Diamond Offshore Company and Diamond Offshore (Trinidad) L.L.C. (collectively "Diamond Defendants" or "Diamond Offshore") through undersigned counsel, pursuant to Fed. R. Evid. 702 and *Daubert*, files its Supplemental Memorandum to Strike the Opinions of Plaintiffs' Expert Courtney Busch.

### I.      SUMMARY

1.      On January 22, 2008 Defendants filed their Motion to Strike Plaintiff's Expert Courtney Busch ("Original Motion") (Ct. Dkt. No. 214).  The Original Motion is incorporated herein as if fully set forth.

2.      On February 13, 2008, Defendants deposed Dr. Busch.  *See* Exhibit "A", deposition of Courtney Busch.[1]  In his deposition Dr. Busch repudiated his opinion on causation as set forth in his December 7, 2007 expert report which is attached hereto as Exhibit B.  In his expert report Dr. Busch opines that: "The subject methanol line (SMDL) was damaged by the passage of a wire rope and possibly chain links over the top of the pipe." Ex. B at p. 2.

---

[1] All page and line references to Dr. Busch's deposition in this Brief are styled "Busch at ___".

3.     In his deposition, Dr. Busch admitted that his opinion that a wire rope caused damage to Plaintiffs' pipeline is wrong.  Busch at 22:1-4.  Although the deadline for the expert opinions of Dr. Busch passed on December 7, 2007, Dr. Busch offered a new opinion at his deposition on February 13, 2008, i.e. an anchor chain solely caused the damage to Plaintiffs' pipeline.  Busch at 58:23-59:3.  However, Dr. Busch candidly admits that his new opinion that an anchor chain caused damage to Plaintiffs' pipeline is merely an assumption.  *Id.*

4.     Dr. Busch's opinions regarding causation should be stricken pursuant to the principles enunciated in *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579 (1993) and its progeny. Further, Dr. Busch's new opinion should be stricken because it is untimely under the Court's Docket Control Order

## II.     BACKGROUND

5.     Plaintiffs suffered a leak to their pipeline on or about December 3, 2004.  On or about January 1, 2005, Plaintiffs discovered the location of the leak.

6.     On January 3, 2005, Plaintiff Total E&P ordered a wire brushing operation on the damaged section of the pipeline.  Ex. C.  On January 6, 2005, the wire brushing operation was performed by Oceaneering, Inc.    Ex. D;    Busch at 12:23-13:5.    Plaintiffs videotaped Oceaneering's wire brushing operation.  *Id.*

7.     Plaintiffs' attorney Mr. Abaunza retained Dr. Busch as an expert on or about January 18, 2005, approximately two weeks after the wire brushing operation was ordered by Plaintiff Total and conducted by Oceaneering Inc.  Busch at 7:2-23.  According to Dr. Busch the wire brushing operation changed the physical characteristics of the damaged section of the pipe. Busch at 65:16-19.  Until January 29, 2008, Plaintiffs failed to notify Dr. Busch of the wire

brushing operation or provide Dr. Busch with the videotape evidence of their physical alteration of the damaged pipe, a key piece of evidence in this case.  Busch at 12:1-17.  Dr. Busch's expert opinions, including his new one, are manifestly incompetent proof and should be stricken.

### III.    PLAINTIFFS PRIOR PLEADINGS AND DR. BUSCH'S PRIOR DECLARATIONS AND AFFIDAVIT MISLED THIS COURT

8.    Repeatedly and consistently throughout this litigation, Plaintiffs have taken the position that a wire rope caused damage to their pipeline thereby proving causation. Plaintiffs' circumstantial proof rested on Dr. Busch's physical review and examination of the damaged section of the pipe and his opinions.  In support of their position Plaintiffs filed Memoranda, Declarations, and Affidavits with this Court stating that Dr. Busch's review of the damaged section of pipeline indicated that a wire rope dragged across Plaintiffs' pipeline.  At the time of all of these filings, Plaintiffs knew about the wire brushing operation conducted by Oceaneering on January 6, 2005.  Based on Dr. Bush's repudiation of his prior opinion and his new-found opinion regarding the anchor chain, all of these filings are flawed and misleading.

9.    The following is a synopsis of Plaintiffs' previous filings with this Court reflecting their circumstantial causation evidence based on Dr. Busch's prior opinion.

   a.    July 3, 2007 – *"The damage to the pipeline was consistent with damage from wire rope."*  Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment ( Ct. Dkt. No. 100) (emphasis added)

   b.    July 3, 2007 – "Dr. Busch visually examined the salvaged section and observed that... *4. The markings on the pipe surface are consistent with damage caused by individual wires of the outer strands of a large diameter wire rope* which is the type of damage expected if a mooring line were dragged across the pipe"  *Id.* citing Declaration of C. Busch. (emphasis added)

   c.    July 3, 2007 – Declaration of C. Busch dated June 29, 2007 repeating statement in subsection b. above. *Id.*

   d.    July 3, 2007 – "The section of the damaged pipe was examined and bore

3

markings on the surface that are consistent with damage caused by individual wires of the outer strands of a large diameter wire rope and is the type damage expected if a mooring line were dragged across the pipe. *See* Plaintiffs' Response to Diamond's Statement of Material Facts Submitted in Support of Motion for Summary Judgment (Ct. Dkt. No. 100).

e.   July 10, 2007: ***"Plaintiffs meet their burden of proof on causation on the very compelling circumstantial evidence*** addressed through discovery and their investigation. Simply put that evidence is as follows: ... ***6. The damage to the pipeline was consistent with damage from a wire rope."*** *See* Plaintiffs' Memorandum in Support of Plaintiffs Motion for Summary Judgment (Ct. Dkt. No. 101). (emphasis added)

f.   July 10, 2007: Declaration of Courtney Busch stating "The markings on the pipe surface are consistent with damage caused by individual wires of the outer strands of a large diameter wire which is the type of damage expected if a mooring line were dragged across the pipe." *Id.* at Ex. B.

g.   July 10, 2007: "The section of the damaged pipe was examined and bore markings on the surface that are consistent with damage caused by individual wires of the outer strands of large diameter wire rope and is the type damage expected if a mooring line were dragged across the pipe. *See* Plaintiffs' Statement of Material Facts (Ct. Dkt. No. 101). (emphasis added)

h.   September 24, 2007: "Dr. Busch's Affidavit is based on his personal observations. ... ***His conclusion is that the markings on the pipe surface are consistent with damage caused by individual wires of outer strands of a large diameter wire rope."*** *See* Plaintiffs' Memorandum in Opposition to Motion to Strike Affidavits of Dr. David Brown and Dr. Courtney Busch (Ct. Dkt. No. 158). (emphasis added)

i.   February 6, 2008: "Diamond argues unconvincingly that Dr. Busch's Opinion 3 regarding the failure of the recovered wire rope is irrelevant. On the contrary, ***the mode failure of the wire rope – and where it dragged are critical issues in this case."*** *See* Plaintiffs' Memorandum in Opposition to Motion to Strike Expert Reports (Ct. Dkt. No. 229). (emphasis added)

10.   At the time of all of these filings, Plaintiffs held evidence within their possession that contradicted Dr. Busch's opinions, statements and Plaintiffs' theory of causation. Plaintiffs did not share that evidence with Dr. Busch or this Court.

4

## IV.    DR. BUSCH REPUDIATES HIS OPINION ON CAUSATION

11.    In his deposition on February 13, 2008, Dr. Busch testified that he reviewed Defendants' expert report of Mr. George Vander Voort which discussed the videos of Plaintiffs' wire brushing operation performed on January 6, 2005.  After reviewing the videos, Dr. Busch acknowledged that his opinion that a wire rope caused damage to Plaintiffs' pipeline was wrong.

> Q.    In fact, it had been your opinion, sir, for a long period of time prior to two weeks ago, that the wire rope had in fact caused the damage that resulted in the leak to the SMDL line.  True?
>
> A.    True.
>
> Q.    And did you read Mr. Vandervort's report and realize that there was a brushing operation that had taken place on or about January 6, or did Mr. Latham call you and tell you about it?
>
> A.    I'm not sure of the timing, but I read this report and he indicated that there was a brushing, and I asked Mr. Latham for the videos to see what it looks like.
>
> Q.    Okay.  And then from reviewing the videos you realized that Mr. Vandervort was correct?
>
> A.    That they had brushed the top.
>
> *Q.    And you realized that your opinion that you had long held about the wire rope having caused the damage was incorrect?*
>
> *A.    That's correct.*

Busch at 21:6-22:4 (emphasis added).

12.    For the first time, Dr. Busch provided a new opinion on causation in his deposition.  He opined that an anchor chain must have caused the damage to Plaintiffs' pipeline. Busch at 58:23-59:3.  That opinion is based on assumption and speculation, but not on any new analysis or metallurgical tests.

> Q.    And what I am trying to get to, Dr. Busch, is it's fair to say, however, that you didn't after – after you found out about the

video that indicated the wire brushing operation had occurred, you didn't undertake to do another investigation different from the one you had done before to conclude that it was in fact the anchor chain that had caused the damage to the pipe.  True?

A.     I made no reassessment of the metallurgy.

Q.     Okay.  Did you make a reassessment of anything after learning about the video?

A:     No.

Busch at 58:4-22

13.     Also, Dr. Busch testified that his new opinion is a mere conclusion:

Q.     Okay.  And so it's fair to say once you realized that the wire rope didn't cause it – cause the damage, you simply concluded that it must have been the anchor chain?

A.     That's correct.

Busch at 58:23-59:3.

14.     Dr. Busch admits that his new opinion regarding the anchor chain causing damage to Plaintiffs' pipeline is based on the same review of the damaged pipe he utilized to render his original opinion on December 7, 2007.  Busch at 33:4-19; 70:4-10.  The same visual evidence that supports Dr. Busch's original theory now magically supports his new theory.  It is: (1) the surface of the pipe was dented; (2) the insulation was torn off it; and (3) the pipe was bent.  Busch at 70:11-23.

15.     However, Dr. Busch testified that none of these items proves that an anchor chain damaged Plaintiffs' pipeline.  In fact Dr. Busch testified that any object, other than an anchor chain, could have caused the same damage to Plaintiffs' pipeline.

Q.     Okay.  Is there anything in particular about the defects or flattened areas themselves that indicate to you that they were caused by an anchor chain as opposed to some other object?

A.    *No.  Some other form could impact the pipe.  Whatever it would be, I don't know, but it could impact the pipe and cause the same damage.*

Q.    That's what I'm trying to get to.  In other words, Dr. Busch, based on your experience and review of the pictures and the pipe and whatnot, there aren't any telltale signs that show that it's in fact an anchor chain that passed over the pipe causing the damage as opposed to some other –

A.    Some other wild thing.

Q.    Well, not wild, but some other product.

A.    *Some other product that impacted the pipe would show essentially the same damage.*

Busch at 83:20-84:20. (emphasis added)

16.    Moreover, Dr. Busch admits that Plaintiffs' wire brushing of the pipe would have changed the physical characteristics on the pipe's surface.  Busch at 66:25-67:11.  The wire brushing operation created its own marks in the damaged area of the pipeline.  Busch at 65:16-19. Dr. Busch admits that he cannot determine if the dents and damage to the pipeline occurred before, during or after Plaintiffs wire brushing operation.  Busch at 26:16-27:9.  Consequently his new opinion on causation is based solely on his assumption.

Q.    Okay.  And so it's your *assumption* that all of the dents and rough surfaces and bending upon which you rely in forming your opinion that the wire – I'm sorry – the anchor chain caused the damage, were in fact caused by the anchor chain passing over the pipe as opposed to the brushing operation from Oceaneering.  True?

A.    That's true.

Busch at 26:25-27:9.  (emphasis added)

17.    For his new opinion regarding the anchor chain, Dr. Busch relies upon his examination referenced in his expert report dated December 7, 2007 without any other changes. Busch at 33:4-19.  That expert report is based on an examination of the damaged pipe after the

7

wire bushing had occurred. Busch at 52:24-53:10. When he performed his metallurgical examination and came to his conclusion that the wire rope caused the pipeline damage in his December 7, 2007 expert report, Dr. Busch did so based on the assumption that no wire brushing operation had occurred. Busch 55:16-56:3; 56:12-18. Dr. Busch never examined the damaged pipe before the wire brushing operation. Busch at 53:13-16. Dr. Busch has not performed any new metallurgical exams to support his new opinion regarding the anchor chain. Busch at 54:24-55:5.

18.     Dr. Busch's opinion that an anchor chain caused damage to Plaintiffs' pipeline is new, contrary to the opinions in his December 7, 2007 expert report, and not supported by any new testing or examination. After performing all necessary examination and metallurgical testing Dr. Busch concluded, in his report of December 7, 2007, that the wire rope caused the damage to Plaintiffs' pipeline and possibly chain links over the top of the pipe. Ex. B. He now disavows his Opinion 1, and has issued a new "oral" opinion regarding the anchor chain.

19.     However, in his December 7, 2007 report, Dr. Busch concluded that contact between the pipeline and chain was merely "possible".[2] The fallacy of his original opinion having been exposed, Dr. Busch now opines that an anchor chain was the *sole* cause of damage to the pipeline. The impetus for Dr. Busch's new opinion is the recognition of evidence, long held by Plaintiffs, that destroys his original theory regarding a wire rope as being the source of Plaintiffs' pipeline damage.

20.     Also, Dr. Busch has no evidence that the anchor chain found on the sea floor by

---

[2] The law of the Fifth Circuit requires that circumstantial proof of causation be probable, not merely possible. *See Thomas v. The Great Atlantic and Pacific Tea Co.*, 233 F.3d 326, 330 (5th Cir. 2000) ("If proof of causation is to be established circumstantially, the evidence must be sufficient to make the plaintiff's asserted theory probable, nor merely possible"); *Mosley v. Excel Corp.*, 109 F.3d 1006, 1009 (5th Cir. 1997), ("Proof of causation requires more than conjecture or guess, and the existence of a causal link between Mosley's injury and Excel's negligence must be demonstrated by the introduction of probative evidence.")

Plaintiffs "matches" an anchor chain from the *Ocean America*.  Busch at 88:8-23.  Although Dr.

Busch has seen the anchor chain on the sea floor, he admits that the sea floor anchor chain is

undamaged and shows no indication of having crossed over and ruptured Plaintiffs' pipeline.

Busch 85:25-86:21.

     21.    Further, Dr. Busch admits that he is unqualified to provide expert testimony on

causation in this case testifying:

> Q.    Okay.  Have you ever been qualified in any court to provide expert
> testimony as to a pipe – or I'm sorry – a wire rope dragging across
> a pipeline?
>
> A.    No.
>
> Q.    Okay.  Has it been a part of your 35 years of practice at Busch and
> Associates to perform an investigation and determine whether wire
> ropes or wire chains cross pipelines and cause damage?
>
> A.    I'm not sure what a wire chain is.
>
> Q.    I'm sorry.  Did I say a wire chain?  A wire rope and/or anchor
> chain, have you ever been asked or has it ever been your business
> during the last 35 years to investigate and determine the cause of a
> pipeline deformation by specifically either a wire rope and/or
> anchor chain?
>
> A.    No.

Busch at 8:19-9:17.

     22.    The wire brushing done by Plaintiffs on January 6, 2005 spoiled the physical

character of the damaged pipe.  All of Dr. Busch's analysis was performed after Plaintiffs' wire

brushing of the pipe which is the subject of this lawsuit.  Plaintiffs have known about the wire

brushing operation since January 6, 2005, over three years ago.  In support of his new opinion

Dr. Busch simply assumes that the damage to the pipeline was caused by the anchor chain

dragging over the pipe.  However, he admits any other object could have caused the same

damage to Plaintiffs' pipeline.  We do not, and cannot know what caused the damage to Plaintiffs' pipeline because the evidence of damage to the pipeline has been scraped off by the Plaintiffs. Accordingly, Dr. Busch's opinions should be stricken.[3]

## V.    ARGUMENTS AND AUTHORITIES

23.    The Court has a unique role in deciding whether to allow scientific testimony. Under the Supreme Court's decision in *Daubert v. Merrill Dow Pharms., Inc.*, the Court is required to act as a "gatekeeper" before scientific or expert testimony is allowed. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  The Court must ensure that the proposed expert testimony is both relevant and reliable under Fed. R. Evid. 702 before it may be considered as competent evidence. *Id.*

24.    To ensure that scientific evidence is both relevant and reliable, the court must examine the basis of the expert testimony. *Id.*  It must examine both the methodology and the mode of analysis to ensure that they are both sufficiently grounded in established evidentiary principles. *Id.* at 595.  An opinion consisting of nothing more than the *ipse dixit* of the expert is not admissible under *Daubert*. *Id.* at 592.  Case law has established that the gatekeeping function of the Court is especially important where an expert opinion is used to establish causation. *See, e.g., In re Agent Orange Products Liability Litigation*, 611 F. Supp. 1223 (E.D.N.Y. 1985).  As the Court noted in the *Agent Orange* case, "Courts are particularly wary of unfounded scientific opinion when causation is the issue." *Id.* at 1249.  Here, like in the *Agent Orange* litigation, "there must be and ought to be some reliable factual basis on which the opinions are premised." *Id.* at 1250 (quoting *Johnston v. United States,* 597 F. Supp. 374, 401 (D.Kan.1984)).

---

[3] Because Dr. Busch's remaining opinions 2, 3, and 4 all relate to the wire rope opinion in No. 1, they should be stricken as well.

25.    Dr. Busch's opinion is nothing more than an *ipse dixit*. He testified that once he realized that the wire rope did not cause damage to the pipeline he "simply concluded that it must have been the anchor chain." Busch 58:23-59:3. Dr. Busch acknowledges the wire brushing operation altered the damaged area of the pipe and created its own marks. Busch at 65:16-19. However, after learning about Plaintiffs' wire brushing operation to the damaged pipeline, Dr. Busch undertook no further investigation, metallurgical exams or review of the damaged pipe. Busch at 54:24-5; 58:4-18. In fact he made no re-assessment of anything after learning of Plaintiffs' wire brushing operation. *Id.* at 58:20-22.

26.    Dr. Busch provides no reasoning or methodology for his new opinion that an anchor chain caused damage to Plaintiffs' pipeline. He admits that his new opinion is based solely on the fact that the wire brushing operation negates his prior opinion that a wire rope caused damage to the pipeline. All of Dr. Busch's examination, review and metallurgical tests led him to conclude that the Ocean America wire rope damaged the pipe. That opinion, as admitted by Dr. Busch, is wrong. Why should that same analysis support his new opinion regarding an anchor chain? It should not and cannot.

27.    It is the obligation of the party proffering expert testimony to provide the Court with sufficient information to make a proper *Daubert* analysis. *Upper St. Rose Fleeting Co v. Consolidated Grain & Barge Co.*, 1999 WL 332216962 at *1 (E.D. La. Nov. 10, 1999) (Lemelle, J.) The expert must provide information sufficient to examine both the *reasoning* and the *methodology* employed by the expert to ensure that the analysis is sufficiently reliable to be admissible under *Daubert. Id.* In its decision on remand in *Daubert*, the Ninth Circuit panel held that expert evidence was not "relevant" because it did not establish a cause of Plaintiff's injuries was "more likely than not." *Daubert v. Merrill-Dow Pharmaceuticals, Inc.*, 43 F.3d

1311 (9th Cir. 1995).

28.    Here, Dr. Busch has not established that it is more likely than not that an anchor chain, much less the *Ocean America's* anchor chain, damaged Plaintiffs pipeline. In fact, he declares the opposite. He admits that any other object could have caused the damage to the pipeline upon which he bases his new opinion and that there are no "tell-tale signs" indicating that an anchor chain caused the damage about which Plaintiffs complain. Busch at 83:20-84:20. Further, because he does not have a sample of the anchor chain from the sea floor, Dr. Busch cannot identify it as the *Ocean America's* anchor chain. Busch at 87:24-88:23.

29.    Expert testimony must have a basis in scientific methodology. *Daubert,* 509 U.S. at 593. Relevant actors include (1) whether the theory can be or has been tested, (2) whether the theory has been subjected to peer review and analysis, (3) the known or potential rate of error in the analysis, and (4) general acceptance of the theory within the scientific community. Whether an opinion was developed solely for litigation has also been recognized as a relevant factor.[4]

30.    It is insufficient for an expert witness to provide a series of bare conclusions without explaining the reasoning and methodology by which he arrived at those opinions. *Upper St. Rose Fleeting Co v. Consolidated Grain & Barge Co.*, 1999 WL 33216962 at *1 (E.D. La. Nov. 10, 1999)(Lemelle, J.). The Fifth Circuit has likewise held that a conclusion offered by an expert that does not provide the basis and reasoning demonstrating that the testimony is relevant and reliable under *Daubert* is "not based on expert knowledge and entitled to the dignity of evidence." *Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997) (quoting *Navarro v. Fuji*

---

[4] *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 408 (6th Cir.2006) ("We have been suspicious of methodologies created for the purpose of litigation" ); *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 252 (6th Cir.2001) ( "If anything, *Kumho* supports the magistrate judge's consideration of factors not mentioned by the Supreme Court, including the fact that [the expert's] study was conducted and the experts' opinions were formed for purposes of litigation." ); *Avery Dennison Corp. v. Four Pillars Enterprise Co.,* 45 Fed. Appx. 479, 484 (6th Cir.2002) (noting that the prepared-solely-for-litigation factor is often assessed in addition to those specifically enumerated in *Daubert* ); *Smelser v. Norfolk Southern Ry. Co.,* 105 F.3d 299, 303 (6th Cir.1997).

*Heavy Indus.*, 117 F.3d 1027 (7th Cir. 1997)).  In short, to be considered expert testimony, the witness must demonstrate that he employed scientific methodologies and reasoning in reaching his conclusions.  "In short, the *requirement* that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability."  509 U.S. at 588 (emphasis added).

31.     In his deposition Dr. Busch testified that he did not perform any metallurgical testing until November 17, 2007.  Busch at 32:7-19.  Dr. Busch's "metallurgical testing" constituted nothing more than looking at the damaged pipe under a microscope.  Busch 34:2-36:10.

32.     At that time, Dr. Busch performed three analyses on the damaged pipe: (a) tensile; (b) chemical; and (c) hardness.  Busch 36:12-18.  The results of those tests are pedestrian and do no support his new theory regarding the anchor chain.  The tensile analysis identified the pipe's tensile strength.  The chemical analysis identified the pipe as a carbon steel pipe.  The hardness analysis showed that the pipe's hardness was uniform all the way around its circumference.  Busch 36:19-38:4.  None of these test results support Dr. Busch's new theory that the *Ocean America's* anchor chain damaged Plaintiffs' pipeline.

33.     The Fifth Circuit has explained that a District Court cannot simply abandon its gatekeeping duties under *Daubert. Watkins v. Telesmith, Inc.*, 121 F.3d 984 (5th Cir. 1997).  In *Watkins*, the court explained that "[t]he Supreme Court held that when expert testimony is offered, the trial judge *must* perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case."  *Id.* at 988-89 (emphasis added).  The court rejected the notion that the District Court can refuse to apply a *Daubert* standard to certain kinds of testimony, holding that the gatekeeping role of the trial court under *Daubert* is mandatory.  The court in *Watkins* adopted the Seventh Circuit's view that "a conclusion without any support

is not one based on expert knowledge and entitled to the dignity of evidence," quoting *Navarro v. Fuji Heavy Indus., Inc.*, 117 F.3d 1027 (7th Cir. 1997).

34.     In *Watkins*, the trial court disallowed expert testimony from an engineer regarding possible alternative designs for a piece of equipment that he alleged would have prevented an accident.  The engineer performed no tests on his proposed alternative design to ensure that it would work as he suggested, and the Fifth Circuit held that the testimony was properly excluded. The *Watkins* court held that mere reliance on an experts' alleged familiarity with the subject-matter was insufficient, reflecting a "pre-*Daubert* sensibility." To be admissible, it is not enough for an expert to fall back on his general professional experience without providing any explanation of how he applied that experience in reaching his conclusions.  Expert testimony requires both analysis and application of an expert's specialized knowledge.

35.     An expert's subjective beliefs are not relevant to the issues presented in this case. Unless Dr. Busch's opinion regarding the source of the anchor chain is grounded on some scientifically valid and reliable analysis, it is inadmissible. *Watkins, supra.* "A conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence." *Id.* at 991 n.11.

36.     Since November 17, 2007, the date of his testing, and December 7, 2007, the date of his report, Dr. Busch has performed no tests to support his new opinion that an anchor chain caused damage to Plaintiffs' pipeline. All of Dr. Busch's analysis and opinions, including his new opinion, are based on a review of the damaged pipe after it was altered by the wire brushing operation conducted on January 6, 2005.  Busch at 14:9-14; 52:24-53:10.  Dr. Busch admits that he cannot differentiate between the damage to the pipeline resulting from the wire brushing operation as opposed to the alleged dragging of the anchor chain over the pipe.  Busch at 69:15-

22. Dr. Busch's subjective assumption that the anchor chain caused damage is insufficient to be admissible under *Watkins,* 121 F.3d at 991.

37.     Plaintiffs' argument that the Court should not apply the *Daubert* standards in a bench trial is contrary to the law. *Daubert* was based on the language of Fed. R. Evid. 702. The Rules of Evidence apply in bench trials just as they do in a jury trial. Neither hearsay nor irrelevant evidence is inadmissible in a bench trial. The case law makes clear that courts apply *Daubert* standards to determine the admissibility of expert evidence in bench trials. *See, e.g., Cleveland ex. rel. Cleveland v. United States,* 457 F.3d 397 (5th Cir. 2006) (*Daubert* standard applied in a bench trial to exclude testimony of a physician regarding standard of care for emergency-room doctors); *St. Martin v. Mobil Exploration & Prod. U.S., Inc.,* 224 F.3d 402 (5th Cir. 2000) (holding that District Court abused its discretion in admitting expert testimony that failed to meet *Daubert* standards in a bench trial). Contrary to the argument advanced by Plaintiffs, the Fifth Circuit has unambiguously held that district courts are required to apply *Daubert* standards in admiralty cases:

> *Daubert v. Merrell Dow Pharmaceuticals, Inc.* established the baseline criteria for scientific expert testimony; *Kumho Tire Co. v. Carmichael* extended *Daubert* to all forms of expert testimony; and **these principles apply in admiralty matters.**

*Stolt Achievement, Ltd. v. Dredge B.E. Lindholm,* 447 F.3d 360 (5th Cir. 2006) (emphasis added).

## VI.     SUMMARY

38.     In its gatekeeping role, the court should strike the expert report and opinions of Dr. Busch under the *Daubert* principles and subsequent cases. Dr. Busch's new opinion that an anchor chain crossed Plaintiffs' pipeline is wholly unreliable, not based on scientific testing or analysis, and amounts to nothing more than the *ipse dixit* of Dr. Busch. Further, Dr. Busch's new opinion regarding the anchor chain was provided after the deadline for expert witness

reports and is untimely. Defendants respectfully request that their Motion to Strike be granted and award them all other just relief.

Respectfully submitted,

_____ /s/ Anthony D. Weiner __
Paul J. Dobrowski (*admitted pro hac vice*)
Lee M. Larkin (*admitted pro hac vice*)
Anthony D. Weiner (*admitted pro hac vice*)
DOBROWSKI L.L.P.
1010 Lamar, Suite 1350
Houston, Texas 77002
aweiner@doblaw.com
713\659-2900 - telephone
713\659-2908 – facsimile


_____ /s/ Robert Guidry_____
Deborah D. Kuchler (#17013)
Robert E. Guidry (#28064)
ABBOTT, SIMSES & KUCHLER, a P.L.C.
400 Lafayette St., Suite 200
New Orleans, Louisiana 70130
504\568-9393 - telephone
504\524-1933 – facsimile

COUNSEL FOR DEFENDANTS
DIAMOND OFFSHORE COMPANY AND
DIAMOND OFFSHORE (TRINIDAD) L.L.C.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2008, I electronically filed a true copy of **Diamond Defendants' Supplemental Memorandum to Strike the Opinions of Plaintiffs' Expert Courtney Busch.** All parties received notice of this filing by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

___ /s/ Anthony D. Weiner_____